**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| YODIT YEMANE, et al., | * | |
| Plaintiff, | * | |
| v. | * | **CIVIL NO. JKB-25-0859** |
| KALDI'S SOCIAL HOUSE INC., et al., | * | |
| Defendants. | * | |
| | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MEMORANDUM

Defendant Tsegaw Hailemariam has filed a Motion to Dismiss the First Amended Complaint (ECF No. 30). In the alternative, Hailemariam asks for a more definite statement and to strike "impertinent and prejudicial matter" from the Amended Complaint. (*Id.*) For the reasons that follow, the motion to dismiss will be granted in part and denied in part and the alternative requests for a more definite statement and to strike will be denied. The Court will also order Defendant Kaldi's Social House ("Kaldi's") to retain counsel, or risk default judgment.

## I.    FACTUAL BACKGROUND

Each Plaintiff in this action is allegedly "a well-known professional model who earns her livelihood modeling and licensing her [images, photos and likenesses (the "Images")] to companies, magazines and individuals for the purpose of advertising products and services." (ECF No. 24 ¶ 24.) Each Plaintiff commands a large Internet following, with several Plaintiffs possessing over one million followers across their social media accounts. (*E.g., id.* ¶¶ 31, 34, 37.) Plaintiffs use their social media accounts "to market to potential clients, grow their fan base, and

build and maintain their brand." (*Id.* ¶ 30.) In doing so, "Plaintiffs are necessarily selective concerning the companies, and brands, for which they model." (*Id.* ¶ 25.)

Plaintiffs allege that Defendants, Kaldi's Social House and its owner, Tsegaw Hailemariam, operate a nightclub where alcohol and food are sold "in a sexually charged atmosphere." (*Id.* ¶ 52.) Plaintiffs further state that Defendants "own, operate, and control Kaldis' social media accounts" and use these accounts "to promote Kaldi's[] and to attract patrons." (*Id.* ¶¶ 52–53.) Plaintiffs allege that Defendants "have used, advertised, created, printed, and distributed the Images of Plaintiffs . . . to create the false impression with potential clientele that each Plaintiff either worked at Kaldi's, endorsed Kaldi's, or was otherwise associated or affiliated with Kaldi's." (*Id.* ¶ 56.) Plaintiffs further assert that the Images were both "misappropriated, and intentionally altered, by [] Defendants" to make it appear that Plaintiffs were affiliated with Kaldi's. (*Id.* ¶ 26.) The Amended Complaint claims that this was done without Plaintiffs' knowledge and that Plaintiffs were not compensated for the use of their Images. (*Id.* ¶¶ 59–60.) Plaintiffs argue that the use of their Images violates several provisions of the Lanham Act, is tortious under Maryland law, and has unjustly enriched Defendants.[1]

Plaintiffs attached the allegedly misappropriated and altered Images (ECF Nos. 1-1 – 1-7) to their original complaint but not to the Amended Complaint. However, the Amended Complaint refers to these exhibits numerous times (*e.g.*, ECF No. 24 ¶¶ 32, 35, 38), and in their brief in opposition to the pending Motion, Plaintiffs state that these exhibits depict the allegedly "misappropriated images" (ECF No. 36 at 2). Except for Exhibit F (ECF No. 1-6), each exhibit is an Instagram post (or posts) advertising an event and depicting a female model or multiple female

---

[1] The Amended Complaint also brought claims under the Maryland Consumer Protection Act (Count Six), for negligence (Count Eight), and for quantum meruit (Count Ten), but Plaintiffs have stated that they wish to withdraw these claims. (ECF No. 36 at 3.) Therefore, these claims will be dismissed.

models. According to the Amended Complaint, these models are Plaintiffs. The usernames of the accounts that made the posts do not contain either Defendant's name. Instead, the usernames associated with the posts containing the Images are, for example, "quericogroupdmv"; "official_chrissydiva_dream.big"; and "mc_papy_juan_el_unico." (*See, e.g.*, ECF Nos. 1-1, 1-2.) However, each post lists "Kaldi's Rooftop" as the location of the event that the post is advertising. The only exception is Exhibit F. (ECF No. 1-6.) This exhibit contains a Facebook post from February 2, 2020, made by an account called "Kaldi's Social Night Life." It depicts a female model, alleged to be Plaintiff Tiffany Keller (ECF No. 24 ¶ 47), and advertises an event to occur at Kaldi's Rooftop on that day.

## II.    STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). Because Defendant Hailemariam is proceeding pro se, his filings with the Court are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Where, as here, exhibits are attached to the original complaint but not to the amended complaint, the Court may still consider the exhibits on a motion to dismiss the amended complaint if the exhibits are "integral to and explicitly relied on in the amended complaint." *Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) (citation modified). The "exhibits are not [superseded] if the amended complaint effectively integrates them." *Id.* Here, the Amended Complaint refers to the exhibits numerous times and, in their opposition to the Motion to Dismiss, Plaintiffs state that the facts alleged in the Amended Complaint are intended to incorporate the exhibits attached to the original complaint. (ECF No. 36 at 2 & n.2.) These exhibits are "effectively integrate[d]" into the Amended Complaint, so the Court will consider them. *Jeffrey M. Brown Assocs., Inc.*, 7 F. App'x at 202.

## III.    DISCUSSION[2]

### A.  Claims by All Plaintiffs Except for Tiffany Keller

Hailemariam's primary argument in support of his Motion is that Plaintiffs have not sufficiently alleged that he "created, uploaded, authorized, or controlled any particular post" that may have depicted Plaintiffs. (ECF No. 30 at 5.) He argues that, "[a]t most," the exhibits Plaintiffs rely on, "show that unidentified third parties created promotional flyers about events at Kaldi's, not that Kaldi's or Hailemariam themselves created or published those materials." (ECF No. 40 at 2.) Plaintiffs respond that they "have pled their images appeared in Kaldi's advertising and provided evidence, via the [e]xhibits, to support those allegations." (ECF No. 36 at 3.) In

---

[2] The Court notes that Hailemariam also moves to dismiss the complaint for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). But the executed summons reflects that service was accepted by a person who stated that their name was Tsegaw Hailemariam. (ECF No. 9.) Hailemariam has not contended that there is an issue of mistaken identity, so this form of personal service is sufficient. *See* Fed. R. Civ. P 4(e)(2)(A). Accordingly, the motion to dismiss on this basis will be denied.

Plaintiffs' view, that is sufficient at the pleading stage. (*Id.*) Except as to Plaintiff Tiffany Keller (for the reasons discussed below), Hailemariam has the better argument.

When exhibits are attached to a complaint, the Court must follow the "exhibit-prevails rule" when evaluating the sufficiency of a plaintiff's claim. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). This rule provides that "in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Id.* (citation omitted). This rule relies on "the presumption that the plaintiff, by basing [her] claim on the attached document, has adopted as true the contents of that document." *Id.* at 167. Thus, if a plaintiff bases her complaint on an exhibit, "yet the [exhibit] blatantly contradicts [her] allegations, then [a court] will dismiss those allegations as implausible." *Wells v. Fuentes*, 126 F.4th 882, 896 (4th Cir. 2025) (internal quotation marks and citation omitted). To be sure, "it is not always appropriate to conclude that the plaintiff has adopted the contents of an attached document." *Goines*, 822 F.3d at 167. As the Fourth Circuit has explained, if that were the case, "a libel plaintiff would plead himself out of court simply by attaching the libelous writing to his complaint." *Id.* Thus, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Id.*

Here, it is no mystery as to why Plaintiffs attached exhibits to the original complaint, which, as explained above, were "effectively integrate[d]" into the Amended Complaint. *See Jeffrey M. Brown Assocs., Inc.*, 7 F. App'x at 202. As Plaintiffs themselves state, they "have pled their images appeared in Kaldi's advertising and provided evidence, via the [e]xhibits, to support those allegations." (ECF No. 36 at 3.) As to the nature of these exhibits, Hailemariam has not contended that the social media posts are inauthentic or fabricated nor does the Court discern any reason to

conclude that they are. *Accord Goines*, 822 F.3d at 167. Thus, Plaintiffs have adopted the contents of the exhibits. *See id.*

Now, the Court must determine what the exhibits precisely depict and then decide if the information in the exhibits is so contrary to the allegations in the Amended Complaint as to render Plaintiffs' claims implausible. *Wells*, 126 F.4th at 896. The exhibits are screenshots of 42 social media posts that depict Images of Plaintiffs that were allegedly misappropriated and altered to promote events at Kaldi's. But of these 42 posts, only a single one comes from an account that is clearly associated with Kaldi's or Hailemariam. That Image (ECF No. 1-6), alleged to be of Plaintiff Tiffany Keller, does support Keller's claims and will be discussed further below. But the remaining 41 posts come from accounts that have no demonstrated connection to Hailemariam or to Kaldi's. For instance, Exhibit B (ECF No. 1-2) contains several Images that are alleged to be of Plaintiffs. But the usernames of the accounts in this exhibit do not contain the name of either Defendant. Instead, the usernames are 'mc_papy_juan_el_unico' and 'quericogroup.' (*Id.*) Similarly, Exhibit G (ECF No. 1-7) contains a post coming from a username called 'urbanbutiee.' Seemingly, the only aspect of these 41 posts that connects them to Defendants is that the location of each advertised event is "Kaldi's Rooftop." But a mere indication that an event will be held at "Kaldi's Rooftop" does not alone lead to a "reasonable inference" that Hailemariam or Kaldi's operated these social media accounts. *See Iqbal*, 556 U.S. at 662. That is particularly true here because the exhibit depicting Tiffany Keller *does* clearly come from a social media account associated with Defendants. (*See* ECF No. 1-6 (showing a Facebook post with an Image allegedly of Keller made by an account called "Kaldi's Social Night Life").) Evidently, it is clear that there was at least one social media account in Kaldis' name, and Plaintiffs were aware of it.

6

Of course, it is possible that Defendants did, in fact, control all of the social media accounts depicted in the exhibits. But it is Plaintiffs' burden to plausibly allege this, and they have not done so. The Amended Complaint never once mentions that the social media accounts in the exhibits are not in Kaldis' name, nor does it even make general allegations that Kaldi's operated social media accounts that were not in its own name. Accordingly, the Court concludes that Plaintiffs have not plausibly alleged that the social media accounts shown in the exhibits were controlled by Defendants.

Having made its findings about what the exhibits actually depict, the Court must determine if the exhibits are so contrary to the Amended Complaint's allegations as to render them implausible. The Court recognizes that the exhibits do not *directly* conflict with the allegations in the Amended Complaint. *See Goines*, 822 F.3d at 167. The Amended Complaint alleges that Kaldis' social media accounts disseminated the Images of Plaintiffs. Meanwhile, the Court has merely found that it is not plausible, based on the current facts, to conclude that the social media accounts in the exhibits belonged to Kaldi's. That does not mean that it is impossible for Kaldi's to have possessed its own social media accounts and for those accounts to have posted Plaintiffs' Images, as the Amended Complaint alleges. But possibility is not the standard required by *Twombly* and *Iqbal*; plausibility is. And the inclusion of the 41 social media posts as exhibits undercuts the Amended Complaint's allegations so much as to make them implausible.

In a nutshell, Plaintiffs make certain, bare claims in their written allegations. Then they attach 42 exhibits, 41 of which shed no light whatsoever on the key issue, which is whether Defendants disseminated the Images in promotion of their business. And, not only do the exhibits themselves supply no affirmative support on the key question, they over and over provide the Court with evidence that the source of the Images, at least overtly, is not Defendants. Multiplied 41

7

times, at some point (well before *41* deficient exhibits), plausibility of the contention that Defendants are responsible for dissemination of the Images is undermined. Effectively, these 41 Images—that add nothing on the key issue—ultimately function as a *subtraction* in the plausibility calculation, by virtue of their iteration, over and over and over again, that the source of the material is other than any name associated with Defendants.

Overall, whatever plausibility the bare words in the Amended Complaint give to Plaintiffs' claims is far outweighed by the lack of plausibility that the deficient exhibits attach to the claims. In this sense, "the exhibit[s] prevail[]," *Goines*, 822 F.3d at 166, and require that the claims of all Plaintiffs, except for Tiffany Keller, made against Hailemariam be dismissed.

### B. Tiffany Keller's Claims

Contrary to the claims of her co-Plaintiffs, Plaintiff Tiffany Keller's claims are validly supported by one exhibit. That exhibit (ECF No. 1-6) contains a Facebook post dated February 2, 2020, which comes from "Kaldi's Social Night Life" and allegedly depicts a misappropriated and altered Image of Keller. Because this post comes from an account plausibly controlled by Hailemariam and Kaldi's, the Court will consider the merits of Keller's claims.

#### 1. Lanham Act Claims

##### a. False Association

Keller brings two claims under the Lanham Act. First, she brings a claim for false association in violation of 15 U.S.C. § 1125(a)(1)(A). A false association claim has three elements:

> (1) The defendant used the plaintiff's word, term, name, symbol, device or any combination thereof in interstate commerce in connection with goods and services; (2) the defendant's use of the plaintiff's word, term, name, symbol, device or any combination thereof was likely to cause confusion, mistake or deception as to the association of the defendant with the plaintiff, or the sponsorship, or approval of defendant's goods or services; and (3) the plaintiff is, or is likely to be, damaged by these acts.

8

*Davalos v. GGC-Baltimore, LLC*, Civ. No. 24-01733-JRR, 2025 WL 266673, at *5 (D. Md. Jan. 22, 2025). In *Davalos*, Judge Rubin addressed nearly identical claims to those presented here. She explained that false association claims are not limited "to use of a written word or statement." *Id.* Rather, "advertisements that include[] an image may create an 'allegedly inappropriate association' which 'could be impliedly false.'" *Id.* (quoting *Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 293 (D. Conn. 2019)). Because the plaintiffs in *Davalos* "explicitly and repeatedly allege[d] that the [defendant's] posts made it appear (falsely) that [p]laintiffs worked at, endorsed, or were otherwise associated with, the [defendant]," the plaintiffs had adequately stated a claim for false association. *Id.*

Keller's allegations here are identical. She asserts that the Image contained in the Facebook post "was intentionally altered to make it appear that Keller was either an employee working at Kaldi's, that she endorsed Kaldi's, or that she was otherwise associated or affiliated with Kaldi's." (ECF No. 24 ¶ 47.) She also alleges that she has not been compensated for the use of her Image and that she has suffered damages as a result of that use. (*Id.* ¶ 48.) Accordingly, Keller has stated a claim for false association.

### b. False Advertising

Keller also brings a claim for false advertising in violation of 15 U.S.C. § 1125(a)(1)(B). A false advertising claim has five elements:

> (1) [T]he defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the

> misrepresentation, either by direct diversion of sales or by a
> lessening of goodwill associated with its products.

*Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (citation omitted).

Hailemariam alleges only that the first element is not satisfied. He argues that "[p]osts that merely display a model's image . . . are not 'statements of fact' about product qualities." (ECF No. 30 at 7.) However, he cites no authority for this contention. And, in fact, there is ample caselaw that supports the notion that social media posts displaying a model's image are "representation[s] of fact" sufficient to satisfy this element. *See, e.g., Davalos*, 2025 WL 266673, at *4; *Guerra v. Erick & Edwin, Inc.*, No. TDC-24-03431, 2026 WL 693014, at *10 (D. Md. Mar. 10, 2026). Thus, the Court rejects this argument.

Hailemariam further contends that there is insufficient information to conclude that the social media post here was a commercial advertisement. (ECF No. 30 at 7.) But again, this contention is not supported by the caselaw. In *Davalos* and *Guerra*, Judges Rubin and Simms both concluded, on materially identical facts, that the plaintiffs had stated false advertising claims. *Davalos*, 2025 WL 266673, at *4; *Guerra*, 2026 WL 693014, at *10; *see also Valencia v. Midnite Rodeo, LLC*, Civ. No. 22-665-RJC-DCK, 2023 WL 7031561, at *9 (W.D.N.C. Sept. 13, 2023), *report and recommendation adopted in part, rejected in part on other grounds*, Civ. No. 22-00665-RJC-DCK, 2024 WL 4274695 (W.D.N.C. Sept. 24, 2024) (concluding in a materially identical case that the social media posts at issue were commercial advertisements). The Court rejects Hailemariam's contention that the social media post depicting Keller is not a commercial advertisement. Accordingly, the Court will deny the motion to dismiss Keller's false advertising claim.[3]

---

[3] Hailemariam also moves for a more definite statement that provides more details about the relevant social media posts, and he moves to strike prejudicial matter from the Amended Complaint. These requests are without merit. Keller has provided the social media post that she complains of. (ECF No. 1-6.) If Hailemariam seeks additional

10

## 2. State Law Claims

Keller also brings claims under Maryland law for violations of her right to privacy and right to publicity, for defamation, and for unjust enrichment. Hailemariam argues that these claims must be dismissed because they are barred by the statute of limitations.[4] The Court agrees.

Under Maryland law, a cause of action accrues—and the statute of limitations begins to run—"when a plaintiff in fact knows or reasonably should know of the wrong." *Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 801 (Md. 2000) (internal quotation marks and citation omitted). This principle is known as the "discovery rule." *Id.* This rule "protects plaintiffs in a position where it was not reasonably possible to have obtained notice of the nature and cause of an injury." *Poole v. Coakley & Williams Const., Inc.*, 31 A.3d 212, 236 (Md. 2011) (internal quotation marks omitted). But, contrary to Keller's contentions, a plaintiff may not always avail herself of the discovery rule. When a claim "is filed *clearly* beyond the applicable limitations period," that is one consideration leaning against application of the discovery rule. *Rose v. Unplugged Sport Bar and Rest. Inc.*, Civ. No. MJM-25-521, 2026 WL 850523, at *6 (D. Md. Mar. 27, 2026) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007)). Furthermore, as Judges in this District have observed numerous times, a plaintiff must "allege[] sufficient facts to warrant application of the discovery rule" in the first place. *Shore v. Mayor & City Council of Baltimore City*, Civ. No. CCB-19-1341, 2020 WL 2848130 at *4 (D. Md. June 2, 2020); *see also Rose*, 2026

---

details about the post, he may request them in discovery. As to the motion to strike, Hailemariam asserts that describing Kaldi's as having a "sexually charged atmosphere" is "impertinent/prejudicial." (ECF No. 30 at 11.) The Court disagrees. This characterization is highly relevant to Keller's claims because she asserts that being associated with Kaldi's harms her brand. And this language is merely descriptive; it is not so colorful or scandalous as to create the possibility of prejudice.

[4] Hailemariam specifically raised a statute of limitations defense to the tort claims, but he did not specifically allege it as to the unjust enrichment claim. However, he did argue that this claim was "duplicative of the tort and Lanham Act claims and should be dismissed." (ECF No. 30 at 10.) Given this statement, the fact that Plaintiffs were on notice of a general statute of limitations defense, and because the Court must construe Hailemariam's arguments liberally due to his pro se status, the Court finds that he has sufficiently raised a statute of limitations defense to the unjust enrichment claim.

11

WL 850523, at *6; *Hughes v. Opel*, Civ. No. JKB-23-1974, 2024 WL 1443329, at *4 (D. Md. Apr. 3, 2024). For instance, as this Court explained in *Hughes*, the discovery rule is inapplicable to a plaintiff in a defamation action who does "not state when or how he discovered the allegedly defamatory remarks." *Hughes*, 2024 WL 1443329, at *4.

Here, the statute of limitations for Keller's right to privacy, right to publicity, and unjust enrichment claims is three years. Md. Code Ann. Cts. & Jud. Proc. § 5-101 (West 2025). The statute of limitations for her defamation claim is one year. *Id.* § 5-105. This action was filed on March 14, 2025, and the post from the "Kaldi's Social Night Life" Facebook account, on which Keller's claims rely, is dated February 2, 2020. Thus, this action was "filed clearly beyond the applicable limitations period[s]." *Goodman*, 494 F.3d at 466; *see also Hughes*, 2024 WL 1443329, at *4 (finding the discovery rule inapplicable where a defamation claim was filed approximately 18 months after the allegedly defamatory statement was made).

Keller has also not pled sufficient facts to warrant application of the discovery rule. Instead, she simply alleges that "discovery will prove that [] Defendants[] republicized [her] image and likeness on various occasions, via different mediums, after the initial date of the posting of [her] image and likeness and through the filing of this complaint." (ECF No. 24 ¶¶ 118, 130.) In the Court's view, this is a less-than-subtle admission that Keller *did not* see the social media post at issue during the limitations period. To hold that such an allegation is sufficient to invoke the discovery rule would be contrary to the entire point of having statutes of limitation periods: "to assure fairness to potential defendants by providing a certain degree of repose, and to provide these persons with the ability to plan for the future without the uncertainty inherent in potential liability." *Poole*, 31 A.3d at 237 (citation modified). Accordingly, Keller's state law claims are barred by the statute of limitations and will be dismissed.

12

### C. Unrepresented Corporate Defendant

The Court addresses one final matter.  Hailemariam purports to bring the instant Motion both on his own behalf and on behalf of Kaldi's.  (ECF No. 30 at 2.)  However, "a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993).  Hailemariam has not indicated that he is a licensed attorney, and even if he is, he has not entered an appearance on behalf of Kaldi's.  Accordingly, Hailemariam is unable to bring the instant Motion on behalf of Kaldi's, and the Court will not dismiss any of the claims against Kaldi's, except for those that Plaintiffs have voluntarily withdrawn.

The Court also will not permit Kaldi's to continue in this litigation unrepresented by counsel.  Within thirty days of this Memorandum and accompanying Order, Kaldi's must notify the Court that it has secured legal representation.  In the event that thirty days pass without counsel entering an appearance, according to the Court's Local Rule 101.2.b, the Court may take any action it deems appropriate, including the entry of default judgment against Kaldi's.  The Court warns Kaldi's that failure to retain counsel within thirty days will result in the entry of default judgment against it without further notice.

### IV. CONCLUSION

For the foregoing reasons, Defendant Tsegaw Hailemariam's Motion to Dismiss the First Amended Complaint (ECF No. 30) will be granted in part and denied in part.  Hailemariam's alternative requests for a more definite statement and to strike prejudicial material will be denied.  Defendant Kaldi's Social House will be directed to retain counsel.  A separate Order follows.

13

DATED this ___4___ day of May, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

14